UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KAREN BECKER

        Plaintiff,

    v.                                    **REPORT AND RECOMMENDATION**
                                               **08-CV-0192 (DNH)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I. Introduction

Plaintiff Karen Becker brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted in part and Defendant's cross-motion for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 8, 2009.

pleadings be denied.[3]

## II. Background

On November 8, 2005, Plaintiff, then 46 years old, filed an application for SSI and DIB, claiming disability since June 28, 2005, because of an impairment involving her right shoulder (R. at 38-42).[4] Her application was denied initially on April 25, 2006 (R. at 27, 30-33). Plaintiff filed a timely request for a hearing on April 28, 2006 (R. at 34-35).

On March 12, 2007, Plaintiff and her attorney appeared before the ALJ (R. at 216-36). The ALJ considered the case *de novo* and, on May 23, 2007, issued a decision finding Plaintiff was not disabled (R. at 8-20). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on February 11, 2008 (R. at 4-7). On February 21, 2008, Plaintiff filed this action disputing her disability determination.

Based on the entire record, the Court recommends remand because the ALJ failed to properly develop the record with respect to the opinions of the Plaintiff's treating physician.

## III. Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

2

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.

### B.  Analysis

#### 1.  The Commissioner's Decision

The ALJ followed the sequential analysis and at step one found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 28, 2005 (R. at 13). At step two, the ALJ found that Plaintiff had a severe right shoulder impairment (R. at 13). At step three, the ALJ concluded that Plaintiff's condition did not meet or equal a listed impairment (R. at 13-14). The ALJ considered Plaintiff's subjective statements about her pain and its limiting effects, but concluded that the limiting effects alleged were "not entirely supported by the record" (R. at 14-17). The ALJ also considered the medical opinions of record (R. at 18). Plaintiff's treating orthopedic surgeon, Dr. Stewart Kaufman, M.D., opined that Plaintiff had a total

---

[5] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.
Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

disability, but the ALJ did not give his opinions controlling weight because they were contradicted by Dr. Kaufman's medical records showing "no significant functional limitations except with her right upper extremity" (R. at 18). However, the ALJ gave significant weight to the opinions of Louis J. Benton Jr., M.D., an orthopedic surgeon examining Plaintiff for Workers' Compensation, and Jonathan Wahl, M.D., a consultative examining physician for the State agency, because their "conclusions that the claimant can perform work that does not require significant use of the upper right extremity are consistent with substantial medical evidence and the claimant's testimony" (R. at 18). Based upon her review of the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform exertionally light work that does not require her to reach above shoulder level with her right upper extremity" (R. at 14). Therefore, the ALJ concluded at step four that Plaintiff could not perform her past relevant work as a home health aide, certified nurse's assistant, or laundry supervisor (R. at 18). At step five, the ALJ found that Plaintiff was a younger individual, with limited education (R. at 18-19). Based upon the relevant vocational factors, Plaintiff's RFC, and using Medical-Vocational Rule 202.18[6] as a guideline, the ALJ found Plaintiff was not disabled (R. at 19). In the alternative, the ALJ noted that using Medical-Vocational Rule 201.19 would also lead to the conclusion that Plaintiff was not disabled (R. at 19).

### 2. Plaintiff's Claims

Plaintiff argues (a) that her treating physician's opinions "should have been granted great weight," and (b) that the ALJ's RFC determination is not supported by substantial evidence in the record. Plaintiff's Brief, pp. 3-5.

---

[6] 20 C.F.R. Part 404, Subpart P, Appendix 2. Rule 202.18.

### a. The ALJ Improperly Analyzed the Treating Physician's Conclusions and Failed to Properly Develop the Record

Plaintiff argues that the opinions of her treating orthopedic surgeon, Dr. Kaufman, "should have been granted great weight." Plaintiff's Brief, pp. 3-4. Defendant argues that the ALJ considered Dr. Kaufman's opinions that Plaintiff was "totally disabled" and properly declined to give them controlling weight because the issue of disability is reserved to the Commissioner, as further discussed below. Defendant's Brief, p. 6-7.

The record in this case shows that Plaintiff injured her right shoulder on June 28, 2005 (R. at 106, 111-13). Two days later, Dr. Kaufman began treating Plaintiff (R. at 94). Examining Plaintiff's x-ray and MRI, Dr. Kaufman diagnosed calcific tendonitis and a rupture in the long head of Plaintiff's biceps, which he wanted to repair quickly (R. at 95, 107). Dr. Kaufman requested authorization from Workers' Compensation to perform surgery (R. at 96), and began Plaintiff on physical therapy prior to surgery, which she attended with little to no improvement (R. at 101, 136-143). Due to difficulties receiving full authorization, Plaintiff's surgery was scheduled, canceled, and authorization was requested again (R. at 91-92, 98-99, 104-05). Finally, on May 9, 2006, Dr. Kaufman performed surgery to repair the injury to Plaintiff's right shoulder (R. at 168). After surgery, Dr. Kaufman examined Plaintiff regularly and noted she was "slowly improving" and he did not expect her pain to subside quickly (R. at 182). From October 2006 to February 2007, Dr. Kaufman examined Plaintiff once a month, and each month completed a form for Workers' Compensation opining that Plaintiff had a total disability (R. at 193, 196, 200, 204, 208). Dr. Kaufman's last examination in the record occurred

6

on February 20, 2007, when he found Plaintiff could flex her shoulder 90°, abduct 75°, reach her posterior iliac crest, and had good muscle tone and strength (R. at 194). However, Dr. Kaufman also found Plaintiff still had tenderness over the biceps tendon and still experienced episodes of pain reaching five on a five point scale (R. at 194). After this examination, Dr. Kaufman submitted a form and a letter to Workers' Compensation opining that Plaintiff had a total disability that prevented her from working and using her right arm, but estimating that she could return to work on June 1, 2007 on modified duty (R. at 191, 193).

> Based upon this record, the ALJ reasoned as follows:
>
> In this case however, Dr. Kaufman's conclusion that the claimant is totally disabled from working is contradicted by the treating records showing that the claimant has no significant functional limitations except with her right upper extremity, and can reach to shoulder level even with the right arm. Accordingly, his report is not given controlling weight.
>
> (R. at 18).

At the outset, the Court notes that Dr. Kaufman's conclusions that Plaintiff was "totally disabled" were not medical opinions, but "opinions on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(1); see Earl-Buck v. Barnhart, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006) (noting that a doctor's opinion that a claimant has a total disability for the purposes of Workers' Compensation is not a medical opinion under the Social Security regulations). Nonetheless, the ALJ weighed Dr. Kaufman's conclusory statements of disability as if they were medical opinions (R. at 18). This was error. Richardson v. Barnhart, 443 F.Supp.2d 411, 421 n.9 (W.D.N.Y. 2006) (finding error where the ALJ assessed the treating physician's opinion that the claimant had a total

7

disability when such opinions are not entitled to controlling weight and the record contained opinions which were entitled to such an analysis).

Furthermore, a careful review of the record reveals that Dr. Kaufman's reports did not contain the necessary functional assessments. See (R. at 94-100, 104-05, 162-72, 182-208) (containing notes of Dr. Kaufman's examinations, but no medical opinions of Plaintiff's functional capacity). When, as here, the treating physician's report does not contain the necessary opinions, the ALJ is obligated to re-contact the medical source for additional information or clarification. 20 C.F.R. § 404.1512(e)(1) (requiring re-contact if the medical report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); see also Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable . . . . It is the *opinion* of the treating physician that is to be sought . . . ."). In light of the ALJ's error in assessing Dr. Kaufman's conclusions and her failure to obtain his relevant medical opinions, the Court recommends remand so the ALJ may re-contact Dr. Kaufman to obtain his opinion of Plaintiff's functional capacity.

### b. The ALJ's RFC Determination Must Be Redetermined on Remand

Because the ALJ's RFC determination is necessarily unsupported by substantial evidence based on the Court's findings above, the ALJ should redetermine the RFC after engaging in an analysis consistent with this opinion.

As a consequence, the Court finds that the record, as it stands, does not support the ALJ's RFC determination. For example, the ALJ found that Plaintiff could perform all the functions of light work,[7] including lifting ten pounds frequently and twenty pounds occasionally, but not reaching her right arm above shoulder level (R. at 14). However, the record shows that for significant periods of time, Plaintiff was unable to even lift the weight of her own arm to shoulder level. Notably, during Dr. Kaufman's first examination of Plaintiff's shoulder in June of 2005, she could not tolerate movement in the shoulder due to overwhelming pain (R. at 94). Through October and November of 2005, examinations showed that Plaintiff could only raise her arm 45 degrees (R. at 99, 104-05). While Plaintiff's range of motion improved through the beginning of 2006 after her surgery in May (R. at 122-25), Plaintiff was in a sling for at least four weeks and then only slowly regained range of motion over time (R. at 166, 182). In October and November of 2006 Dr. Kaufman found Plaintiff could only raise her shoulder 70 or 75 degrees (R. at 203, 206). It was not until January 23, 2007 that Dr. Kaufman found Plaintiff could raise her arm 90 degrees or shoulder level (R. at 197).

The ALJ also asserts that the opinions of Drs. Wahl and Benton were consistent with her RFC finding (R. at 18). Instead, Dr. Benton found that Plaintiff "could not use the right upper extremity for any meaningful work" and suggested she might be able to do work that only required the use of her left arm (R. at 119). Admittedly, Dr. Benton's assessment is of limited value because it was conducted not even two months after

---

[7] Light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Plaintiff's injury when she could flex her shoulder no more than thirty degrees (R. at 119). The record clearly shows Plaintiff gained greater range of motion in the next two years. Nonetheless, Dr. Benton's opinion certainly does not support the ALJ's RFC assessment. Similarly, Dr. Wahl found that Plaintiff could not raise her shoulder above ninety degrees and therefore opined that she had a "moderate limitation" for "activities that would require biceps flexion" and "lifting with the right [shoulder] that requires moderate or greater levels of exertion" (R. at 124). However, Dr. Wahl's assessment was approximately two months before Plaintiff finally had surgery, and the record shows that Plaintiff's shoulder recovered motion very slowly after that surgery (R. at 162, 164, 166, 182, 194-207). Therefore, on remand the ALJ must carefully consider all of the evidence, including various examinations showing that Plaintiff could not raise her arm to even shoulder level and the impact of that evidence and the examinations on the Plaintiff's RFC. See Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *7) ("It is well-settled that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

### IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: August 24, 2009

Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED: August 24, 2009

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge